IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Timothy Brian Brown, #08754-081, ) | |
| ) | Civil Action No. 8:08-2168-SB-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| United States of America, ) | |
| and Dr. Victor Loranth, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a federal prisoner proceeding *pro se*, alleges his constitutional rights have been violated pursuant to *Bivens*[1] and the Federal Torts Claim Act ("FTCA").[2] (Compl. ¶¶ 17-23.) This matter is before the Court on the defendants' motion for summary judgment (Dkt. # 15) and the plaintiff's cross-motion for summary judgment (Dkt. # 18).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

---

[1] *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

[2] 28 U.S.C. §§ 2671-2680.

The plaintiff brought this action on June 2, 2008, seeking damages for alleged civil rights violations and negligence.[3] On September 8, 2008, the defendants filed a motion for summary judgment. By order filed September 9, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On October 14, 2008, the plaintiff filed a response opposing the defendant's summary judgment motion (Dkt. # 17) and he also filed a cross-motion for summary judgment (Dkt. # 18).

## FACTS PRESENTED

The plaintiff is a federal inmate currently housed in Yazoo City, MS. During the time of the incidents relative to his claims, the plaintiff was housed at the Federal Correctional Institution in Williamsburg, SC ("FCI-Williamsburg").

In his complaint, the plaintiff alleges that beginning on or about September 14, 2005, he began to experience severe abdominal pain periodically over a three month period. He alleges that on November 8, 2005, he was transported to a hospital and diagnosed with a stomach virus. (Compl. ¶¶ 2-4.) He states that over the subsequent five month period, he experienced abdominal pain every three to four weeks and his medical concerns were frequently dismissed. (Compl. ¶ 5.)

---

[3]As there was no prison mailroom date stamp, this date reflect the date that the envelope containing the complaint was postmarked  *See Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court). (Compl. Ex. # 13.)

2

The plaintiff was transferred to the FCI-Williamsburg on May 11, 2006. The plaintiff alleges he experienced another bout of stomach pain while he was in transit to FCI-Williamsburg and he was x-rayed, but the results were lost in transit.

Upon his arrival at the FCI-Wiliamsburg, the plaintiff alleges he asked the defendant Dr. Victor Loranth to run tests to determine the cause of his stomach pain, which the plaintiff states he had determined was from his gall bladder. (Compl. ¶ 7.) He states that Dr. Loranth insisted on taking more x-rays which the plaintiff states 95% of the time will not detect gall bladder problems. (*Id.*)

He alleges that during May and June, he experienced violent pain which was occurring more frequently, sometimes twice weekly. (Compl. ¶ 8.) He alleges the medical team at FCI-Williamsburg was unresponsive to his requests for treatment and some of his medical request forms were ignored and not placed into his file. (*Id.*)

He alleges that on June 22, 2006, he experienced a severe attack of abdominal pain that rendered him incapacitated. He states he was taken for emergency treatment and given a GI Cocktail and dismissed after thirty minutes. (Compl. ¶ 9.) He alleges that over the next five days, he noticed his urine was extremely dark and he was concerned that there was blood in his urine. (Compl. ¶ 10.) He alleges that on June 27, 2006, he approached the lab technician and asked her to test his urine. While awaiting the results, he alleges that Dr. Loranth entered the lab and questioned why the plaintiff was present. (Compl. ¶ 11.) He alleges Dr. Loranth became upset and after flipping through the

plaintiff's chart, harshly ordered the technician to get the results. (*Id.*)  He alleges Dr. Loranth read the results and thrust them within one inch of his nose and screamed that the results were negative. (*Id.*) He alleges Dr. Loranth stated that the plaintiff was faking and schizophrenic with the illness being all in his head. *(Id.)* He alleges Dr. Loranth ordered the plaintiff out of the lab and then stormed out of the lab himself. (*Id.*)

The plaintiff alleges on June 29, 2006, after he and the lab technician reported the incident to the Medical Director, he was transported to two different hospitals for further testing and it was determined that he needed emergency surgery. (Compl. ¶ 12.)  A laproscopic cholecystectomy was performed and the plaintiff's gall bladder removed. (*Id.*)

The plaintiff alleges that the defendants failed to provide him with the proper medical care and delayed medical treatment. (Compl. ¶ 13.)  He alleges Dr. Loranth discriminated against him by saying that he was schizophrenic and faking. (Compl. ¶ 14.) He further alleges Dr. Loranth failed to abide by the health care bill of rights which states that inmates have the right to be treated with respect, consideration, and dignity and the right to be provided with information regarding diagnosis, treatment, and prognosis. (*Id.*)

**Summary of Medical Records**

Prior to the plaintiff's arrival at FCI-Williamsburg, he had been diagnosed with hypertension and schizophrenia. (Defs.' Mem. Supp Summ. J. Mot. Ex. #3 -Pl.'s Med. Record 4 -6.)  On June 22, 2006, while at FCI-Williamsburg, the plaintiff was seen by medical staff complaining of abdominal pain. (*Id.* at 10.)  The plaintiff was diagnosed with

possible cholecystitis, a sudden onset of inflammation of the gallbladder, resulting in severe, steady upper abdominal pain, which may occur repeatedly. (*Id*.) The plaintiff was given an injection of an intra-muscular pain medication and gastrointestinal medications. (*Id*.) It was noted that the plaintiff's pain subsided and he was instructed to return to sick call the next day for further evaluation. (*Id.*) On June 23, 2006, the plaintiff was seen for a follow-up visit. (*Id.* at 11-12.) The plaintiff was prescribed Bentyl, a medication used to treat irritable bowel syndrome, and a CT scan was ordered. (*Id*.)

On June 27, 2006, the plaintiff was seen complaining of blood in his urine. (Defs.' Mem. Supp. Summ. J. Mot. Ex. # 3 - Pl.'s Med. Records at 13-14.) A urinalysis was ordered to check for the presence of blood in the plaintiff's urine. (*Id*.) The urinalysis revealed no blood in the plaintiff's urine, but showed there was a large amount of bilirubin. (*Id*. at 47; 51.) The plaintiff was diagnosed with a possible cholelithiasis and mild cholecystitis. (Defs.' Mem. Supp. Summ. J. Mot. Ex. #2 ¶ 5.) Additional laboratory tests were ordered. (*Id*.) It was noted that the plaintiff left the Health Services Unit before the examination could be completed and that he was upset with Dr. Loranth. (*Id.*)

On June 29, 2006, the plaintiff was transported to the local hospital due to his chronic abdominal pain and elevated bilirubin. (*Id*. at 15-18.) An ultrasound performed at the hospital revealed chronic calculus cholecystitis and a laproscopic cholecystectomy was performed to remove his gallbladder. (*Id.*) On July 3, 2006, the plaintiff was discharged from the hospital and returned to FCI- Williamsburg. (Ex. #3 19-21.) After

the surgery, the plaintiff was examined and it was noted that the abdominal punctures were healing well. (*Id*.)  The plaintiff was advised of the discharge orders which included no lifting, and no diet restrictions, except decrease fat intake. (*Id.*)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### *Bivens* claims[4]

Initially, the undersigned notes that the *Bivens* claims against the defendant the United States should be dismissed. In *Bivens,* the Court recognized a cause of action against federal officers in their individual capacity for an alleged violation of a plaintiff's constitutional rights. However, there is no cause of action pursuant to *Bivens* against

---

[4] In his complaint, the plaintiff alleges the "defendants acted with deliberate indifference to Plaintiff's serious medical needs in violation of Due Process and Plaintiff's right to be free from cruel and unusual punishment." (Compl. ¶ 18.) The interests protected by due process are not implicated in this case. The deliberate indifference standard is applied to enforce the Eighth Amendment's prohibition of cruel and unusual punishments.

7

federal agencies or the United States. *See Correctional Serv. Corp. v. Malesko*, 534 U.S. 61, 71 (2001)(A federal prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP); *Randall v. United States*, 95 F.3d 339, 345 (4th Cir.1996) (stating no remedy under *Bivens* against the federal government exists, just against federal officials individually). Thus, the plaintiff's *Bivens* claims against the United States should be dismissed.

As to the merits of the plaintiff's *Bivens* claims against Dr. Loranth, the undersigned finds that the plaintiff has failed to state a claim. The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn,* the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d 848, 851 (4th Cir. 1990). Unless medical needs were serious or life threatening,

and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)).

It appears the plaintiff bases his claims on Dr. Loranth's alleged attitude that the plaintiff was faking and ordering additional x-rays, even though the plaintiff acknowledges that the x-rays ordered while he was in transit to FCI-Williamsburg were lost. The plaintiff has shown nothing more than a disagreement with the medical treatment provided, not that he was denied medical treatment. Further, even assuming Dr. Loranth accused the plaintiff of faking his illness, the records establish that he nonetheless treated the plaintiff and ordered additional tests.

At most, the plaintiff's complaint sounds of medical negligence, which is not actionable under 42 U.S.C. § 1983. *Miltier,* 896 F.2d at 851. The medical records show that the plaintiff has received continuous and ongoing treatment for his complaints. In this case, the undisputed evidence (the plaintiff's medical records) reflects that the plaintiff was

seen and treated on multiple occasions by medical personnel at FCI-Williamsburg and approximately seven weeks after arriving at FCI-Edgefield, he had surgery to remove his gallbladder. The undersigned cannot find that the defendants' treatment of his the plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Estelle,* 429 U.S. at 105. Accordingly, the plaintiff has failed to state a claim for medical indifference.[5]

At most, there was a delay in treating the plaintiff. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994). As stated above, a medical need is serious if a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. at 1037. The plaintiff has failed to allege how any such delay in his treatment resulted in a life-long handicap or permanent loss. Accordingly, the defendants' motion to dismiss should be granted.

**Claims under the FTCA**

---

[5] As to the plaintiff's allegations that the defendants violated the health care bill of rights for inmate, even assuming the defendants failed to follow these guidelines, the plaintiff has not stated a constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977)(there is no constitutional right to a grievance procedure); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

Initially, the undersigned notes that the United States is the only proper defendant to a FTCA claim. *Holmes v. Eddy*, 341 F.2d 477 (4th Cir. 1965)(holding that federal agencies cannot be sued under the FTCA); *see also* 28 U.S.C. § 1346(b) (conferring jurisdiction on courts for tort claims "against the United States"). The FTCA provides a limited waiver of sovereign immunity that enables parties that are injured by an agent of the United States to obtain relief. Accordingly, the plaintiff's FTCA claims against the defendant Dr. Loranth should be dismissed.

As to the merits of the plaintiff's FTCA claims against the defendant the United States, the undersigned finds the plaintiff has failed to state a claim. Under the FTCA, federal courts are directed to determine liability based upon an analysis under state law. Since the medical negligence allegedly occurred in South Carolina, the substantive law of South Carolina controls. *See United States v. Neustadt*, 366 U.S. 696, 706 n. 15 (1961). Accordingly, the claims relating to care provided should be evaluated in accordance with South Carolina tort law.[6]

In South Carolina, a plaintiff alleging a medical malpractice claim must proved by a preponderance of the evidence the following:

> (a) The recognized and generally accepted standards, practices, and procedures in the community which would be

---

[6] Under lex loci delicti, the applicable state substantive law is the law of the "place of the wrong." Courts have interpreted "the place of the wrong," for purposes of lex loci delicti, as the place where "the last event necessary to make an [actor] liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986) (*quoting Miller v. Holiday Inns, Inc.*, 436 F.Supp. 460, 462 (E.D. Va.1977)).

> exercised by competent physicians in the same speciality under similar circumstances;
>
> (b) that the physician or medical personnel negligently deviated from the generally accepted standards, practices, and procedures;
>
> (c) that such negligent deviation from the generally accepted standards, practices, and procedures was a proximate cause of the plaintiff's injury; and
>
> (d) that the plaintiff was injured.

*Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000) (internal citations omitted). Furthermore, the plaintiff must establish by expert testimony both the "standard of care and the defendant's failure to conform to the required standard, unless the subject matter is of common knowledge or experience so that no special learning is needed to evaluate the defendant's conduct." *Martasin v. Hilton Head Health Sys. L.P.*, 613 S.E.2d 795, 799 (S.C. Ct.App. 2005)(*citing Gooding v. St. Francis Xavier Hosp.*, 487 S.E.2d 596, 599 (S.C. 1997)). "In addition to proving the defendant negligent, the plaintiff must also prove that the defendant's negligence was a proximate cause of the plaintiff's injury." *Carver v. Med. Soc'y of S.C.*, 334 S.E.2d 125, 127 (S.C. Ct.App. 1985). Furthermore, in South Carolina, the burden of proof in a medical malpractice case is entirely upon the plaintiff. *Dumont v. United States*, 80 F.Supp.2d 576, 581 (D.S.C. 2000).

Here, the plaintiff has failed to establish a claim under the FTCA. The plaintiff has not set forth any evidence, except for his own conclusory allegations, that the defendants failed to conform to a required standard or were negligent, and the plaintiff has failed to establish any causal link between the alleged negligence and any injury. In short, the

plaintiff has utterly failed in his burden of proof. Therefore, it is recommended that the defendants be granted summary judgment with respect to the plaintiff's FTCA claims.

**State Law Claims**

To the extent that the plaintiff's complaint states additional claims under state law, (i.e. medical malpractice or negligence), the court should decline to exercise supplemental jurisdiction over the claims as it is recommended that summary judgment be granted on the plaintiff's federal claims as set for above. *See* 28 U.S.C. § 1367(c).

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the Defendants' Motion for Summary Judgment (Dkt. # 15) be GRANTED; the Plaintiff's Motion for Summary Judgment (Dkt. # 18) be DENIED; and the complaint DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

March 4, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 10768
> Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).