IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

RECEIVED
CLERK, CHARLESTON, SC
2009 SEP -2  P 3: 35

| | |
|---|---|
| Timothy Brian Brown, # 08754-081 ) | |
| ) | Civil Action No. 8:08-cv-2168-SB |
| Plaintiff, ) | |
| ) | **ORDER** |
| v. ) | |
| ) | |
| United States of America and Dr. ) | |
| Victor Loranth, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the Plaintiff's <u>pro se</u>[1] complaint brought pursuant
to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), and the Federal
Tort Claims Act, 28 U.S.C. §§ 2671-2680 ("FTCA"). The record contains the report and
recommendation ("R&R") of a United States Magistrate Judge, which was made in
accordance with 28 U.S.C. § 636(b)(1)(B). In the R&R, the Magistrate Judge recommends
that the Court grant the Defendants' motion for summary judgment and deny the Plaintiff's
motion for summary judgment. The Plaintiff filed timely objections to the R&R. <u>See</u> 28
U.S.C. § 636(b)(1) (stating that a party may object, in writing, to an R&R within ten days
after being served with a copy of that report).

## BACKGROUND

On November 21, 2001, the United States District Court for the District of Utah
sentenced the Plaintiff to 188 months in prison. The Plaintiff is currently incarcerated at
the Federal Correctional Institution in Yazoo City, Mississippi, but during the time period

---

[1]   Because the Plaintiff proceeds <u>pro se</u>, his pleadings are accorded liberal
construction. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

relevant to his complaint, he was incarcerated at the Federal Correctional Institution in Williamsburg, South Carolina ("FCI-Williamsburg").

## I.    The Plaintiff's Complaint

The Plaintiff names the United States of America and Dr. Victor Loranth, the Clinical Director at FCI-Williamsburg, as Defendants. The Plaintiff alleges that the Defendants violated his constitutional rights by acting with deliberate indifference to his serious medical needs and that the Defendants are liable under the FTCA, 28 U.S.C. §§ 2671-2680.

The Plaintiff alleges that on or about September 14, 2005, he began to experience severe abdominal pain. He claims that he experienced the pain roughly every month and that his complaints were often overlooked by medical staff.



According to the Plaintiff, on May 5, 2006, while he was in transit to FCI-Williamsburg from another correctional institution, he suffered a bout of severe abdominal pain for which he was x-rayed; however, the Plaintiff asserts that the x-ray results were lost in transit. Upon his arrival at FCI-Williamsburg on May 11, 2006, the Plaintiff alleges that he asked Dr. Loranth to continue testing him to diagnose his pain. The Plaintiff asserts that Dr. Loranth "insisted on taking more x-rays, even though he had already expressed that 95% of the time[ ] x-rays could not detect gall bladder problems." (Entry 1 at 2.) The Plaintiff asserts that he experienced pain throughout May and June on a weekly and sometimes bi-weekly basis but that his complaints were ignored.

According to the Plaintiff, on or about June 22, 2006, he experienced abdominal pain so severe that it rendered him immobile and he had to be transferred to the medical department for emergency treatment. The Plaintiff alleges that a mid-level practitioner gave him a "GI cocktail" for his pain. After noticing that his urine was extremely dark and

worrying about the presence of blood in his urine, the Plaintiff claims he approached a lab technician for testing. The Plaintiff alleges that while he was waiting for the test results, Dr. Loranth entered the lab and questioned the technician about the testing. The Plaintiff asserts that Dr. Loranth "thrust the results of the test within 1 inch of [his] nose as he screamed that it was negative for blood" and that Dr. Loranth "yelled that the Plaintiff was faking his illness, that it was all in his head, he said that Plaintiff was schitzophrenic [sic], so he must be imagining the whole thing." (Entry 1 at 3.)

The Plaintiff next alleges that on June 29, 2006, after he and the technician reported the incident with Dr. Loranth, he was transported to two hospitals for further testing, where it was determined that he needed emergency surgery to remove his gallbladder.



The Plaintiff alleges that the Defendants failed to provide him with the proper medical care and delayed his medical treatment. He also alleges that Dr. Loranth discriminated against him by saying that he was schizophrenic and faking. He further alleges that Dr. Loranth failed to abide by the health care bill of rights, which states that inmates have the right to be treated with respect, consideration, and dignity, as well as the right to be provided with information regarding diagnosis, treatment, and prognosis.

## II.    The Medical Evidence

The Plaintiff submitted copies of his medical records in conjunction with his complaint, and the Defendants submitted copies in conjunction with their motion for summary judgment. According to the records, the Plaintiff was diagnosed with hypertension and schizophrenia prior to his arrival at FCI-Williamsburg. Due to his hypertension, the Plaintiff was placed in the FCI-Williamsburg Hypertension Chronic Care Clinic upon his arrival (on May 11, 2006).

The records indicate that he was seen by medical staff on June 22, 2006, due to complaints of abdominal pain, and that he was diagnosed with possible cholecystitis, a sudden onset of inflammation of the gallbladder that results in severe, steady upper abdominal pain. The Plaintiff received an injection of an intra-muscular pain medication and gastrointestinal medications. The records indicate that the Plaintiff's pain subsided and he was instructed to return to sick call the next day for further evaluation. On June 23, 2006, the Plaintiff returned for his follow-up visit and was prescribed Bentyl, a medication used to treat irritable bowel syndrome. In addition, a CT scan was ordered.

On June 27, 2006, the Plaintiff was seen regarding complaints of blood in his urine. A urinalysis was ordered, but it revealed no blood in the urine. Instead, the urinalysis revealed a large amount of bilirubin, and the Plaintiff was diagnosed with a possible cholelithiasis and mild cholecystitis. The medical records indicate that additional laboratory tests were ordered, that the Plaintiff left before the examination could be completed,[2] and that the Plaintiff was upset with Dr. Loranth.

On June 29, 2006, the Plaintiff was transported to the local hospital due to his abdominal pain and elevated bilirubin. An ultrasound revealed chronic calculus cholecystitis, and doctors performed a laproscopic cholecystectomy to remove the Plaintiff's gallbladder. The Plaintiff was discharged from the hospital on July 3, 2006, and sent back to FCI-Williamsburg. The Plaintiff's follow-up examinations revealed that the abdominal punctures were healing well, and the Plaintiff was advised not to lift heavy objects and to decrease his fat intake.

---

[2] The Plaintiff asserts that Dr. Loranth kicked him out of the medical unit.

4

## STANDARD OF REVIEW

### I.    The Magistrate Judge's R&R

The Court is charged with conducting a *de novo* review of any portion of the R&R to which specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the R&R to which the objection is made and the basis for the objection. Id.

### II.   Motion for Summary Judgment



To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr. Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Celotex,

5

477 U.S. at 327.

## III. Motion to Dismiss for Failure to State a Claim

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe factual allegations in the nonmoving party's favor, but the Court is not similarly bound with respect to legal conclusions. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). A complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

## DISCUSSION



On September 8, 2008, the Defendants filed a motion for summary judgment,[3] alleging, with respect to the Plaintiff's Bivens claim: (1) that the Court lacks subject matter jurisdiction over Defendant Loranth in his official capacity and that sovereign immunity deprives the Court of jurisdiction over the United States; (2) that the Plaintiff has failed to state a constitutional violation; and (3) that qualified immunity protects Defendant Loranth from suit. In addition, with respect to the Plaintiff's FTCA claim, the Defendants allege that the Plaintiff has failed to state a prima facie claim of negligence and that the Plaintiff has failed to meet his burden. The Defendants concede that the Plaintiff has exhausted his administrative remedies.

---

[3] The Defendants caption their motion as one for summary judgment, but they also refer to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. A review of the motion indicates that the Defendants are seeking summary judgment on the Plaintiff's Bivens claim as they rely on matters outside of the pleadings. With respect to the Plaintiff's FTCA claim, however, the Defendants assert that the Plaintiff has failed to state a claim and that he has failed to carry his burden.

On October 14, 2008, the Plaintiff filed a cross-motion for summary judgment, arguing that the Court has jurisdiction over the Defendants in their official and individual capacities and that he has demonstrated an Eighth Amendment violation. The Plaintiff also claims that he separated his negligence and constitutional claims and that he stated a prima facie claim of negligence.

## I.     The Magistrate Judge's R&R

As previously mentioned, the Magistrate Judge recommended that the Court grant the Defendants' motion for summary judgment and deny the Plaintiff's motion for summary judgment. Specifically, the Magistrate Judge found as follows.

### A.     The Plaintiff's <u>Bivens</u> Claim

First, the Magistrate Judge recommended dismissal of the Plaintiff's <u>Bivens</u> claim against the United States because a prisoner may not bring a <u>Bivens</u> claim against the United States. <u>See</u> <u>Correctional Servs. Corp. v. Malesko</u>, 534 U.S. 61, 71 (2001) ("If a



federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a <u>Bivens</u> claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a <u>Bivens</u> claim against the officer's employer, the United States, or the BOP."); <u>Randall v. United States</u>, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under <u>Bivens</u> is against federal officials individually, not the federal government.").

Next, as to the merits of the Plaintiff's <u>Bivens</u> claim against Dr. Loranth, the Magistrate Judge found that the Plaintiff failed to state a claim for deliberate indifference to serious medical needs, noting that the Plaintiff's medical records show that the Plaintiff received continuous treatment for his complaints and that his gallbladder was removed

seven weeks after he arrived at FCI-Williamsburg.[4] See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (stating that prison officials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (noting that deliberate indifference may be demonstrated by actual intent or reckless disregard but that mere negligence or medical malpractice does not suffice). The Magistrate Judge further determined that, at most, the Plaintiff alleged a delay in his treatment; however, the Magistrate Judge found that the record contains no medical evidence to establish the detrimental effect of delay, such as a lifelong handicap or permanent loss.[5] Accordingly, the Magistrate Judge recommended that the Court grant the Defendants' motion.

### B. The Plaintiff's FTCA Claim

With respect to the Plaintiff's FTCA claim, the Magistrate Judge first noted that the United States is the only proper Defendant to this claim. See 28 U.S.C. § 1346(b)(1) (providing that the FTCA effects a limited waiver of the United States' sovereign immunity for "personal injury or death caused by the negligent or wrongful act or omission of any



---

[4] The Plaintiff alleges that the "defendants acted with deliberate indifference to Plaintiff's serious medical needs in violation of Due Process and Plaintiff's right to be free from cruel and unusual punishment." (Entry 1 ¶ 18.) As the Magistrate Judge noted, however, the Plaintiff's due process rights are not implicated in this case; rather, the Eighth Amendment's prohibition against cruel and unusual punishment applies to protect the Plaintiff from deliberate indifference to serious medical needs.

[5] In addition, the Magistrate Judge determined that the Plaintiff had not stated a constitutional claim by alleging that the Defendants violated the health care bill of rights for inmates because there is no constitutional right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977).

employee of the Government while acting within the scope of his office or employment").

Next, the Magistrate Judge considered the merits of the Plaintiff's FTCA claim against the United States and determined that the Plaintiff's claim failed. First, the Magistrate Judge noted that federal courts must determine liability under the FTCA based on an analysis under the substantive tort law of the state where the harm allegedly occurred. Here, because the Plaintiff alleges a claim for medical negligence/malpractice that occurred in South Carolina, the Magistrate Judge considered the relevant South Carolina law. In South Carolina:

> a plaintiff alleging medical malpractice must provide evidence showing (1) the generally recognized and accepted practices and procedures that would be followed by average, competent practitioners in the defendants' field of medicine under the same or similar circumstances, and (2) that the defendants departed from the recognized and generally accepted standards. Also, the plaintiff must show that the defendants' departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages. The plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants.

 David v. McLeod Regional Med. Ctr, 367 S.C. 242, 247-48, 626 S.E.2d 1, 3-4 (2006) (internal citations omitted).

In the R&R, the Magistrate Judge concluded that the Plaintiff had failed to set forth any evidence, aside from this own conclusory allegations, that the Defendants failed to conform to a required standard of care or that they were somehow negligent. Additionally, the Magistrate Judge determined that the Plaintiff had failed to establish any causal link between the alleged negligence and any injury. Therefore, the Magistrate Judge recommended that the Court grant summary judgment in favor of the Defendants on the

Plaintiff's FTCA claim.

## II.     The Plaintiff's Objections

**A.**     In his objections, the Plaintiff first asserts that any state law claims should be dismissed without prejudice.  In declining to exercise supplemental jurisdiction over the Plaintiff's state law claims (that are not preempted by the FTCA), the Court agrees that such claims are dismissed without prejudice.  Therefore, this objection is sustained.

**B.**     Next, the Plaintiff asserts that he should be granted leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure to cure any deficiencies. Specifically, the Plaintiff wishes to amend his complaint to allege that "he still suffers emotional pain from the illness due to Defendant's delay in treatment, a lifelong hinderance [sic] and permanent loss." (Entry 23 at 1.)  In addition to his request to amend, the Plaintiff objects to the Magistrate Judge's reliance on the medical records submitted by the Defendants and asserts that he "disputes the validity of the entries."   (Id. at 2.) Furthermore, the Plaintiff claims that he is entitled to an evidentiary hearing where he can



call expert witnesses on his behalf as well as witnesses to "establish falsifications in the Defendants['] claims."  (Id.)

As an initial matter, the Court notes that the Plaintiff's requested amendment presumably relates to the Magistrate Judge's statement that the Plaintiff "has failed to allege how any such delay in his treatment resulted in a life-long handicap or permanent loss."[6]  (Entry 23 at 1; Entry 21 at 10.)  This statement of the Magistrate Judge relates to

---

[6] As previously mentioned, the Magistrate Judge determined that the Plaintiff failed to state a claim for medical indifference because he failed to demonstrate that Dr. Loranth's treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Estelle, 429 U.S. at 105.

the delay aspect of the Plaintiff's claim.[7] (Entry 23 at 1; Entry 21 at 10.)

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." Estelle, 429 U.S. at 104. As a general rule, "a medical need may be deemed objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Webb, 281 F. App'x at 165 (citing Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980), and Loe v. Armistead, 582 F.2d 1291, 1292-93, 1295-96 (4th Cir. 1978)). "In order to act with deliberate indifference, a public official must have been personally aware of facts indicating a substantial risk of serious harm, and the official must have actually recognized the existence of such a risk." Id. (citing Farmer v. Brennan, 511 U.S. 825, 838 (1994)).

In addition, under the law a significant delay in an inmate's medical treatment may, under the appropriate circumstances, indicate an Eighth Amendment violation. See Estelle, 429 U.S. at 104-05 (holding that deliberate indifference may be demonstrated by "intentionally denying or delaying access to medical care"). "An Eighth Amendment violation only occurs, however, if the delay results in some substantial harm to the patient."



---

Nevertheless, the Magistrate Judge stated, "[a]t most, there was a delay in treating the Plaintiff." (Entry 21 at 10.) The Magistrate Judge determined, however, that the Plaintiff failed to show how any alleged delay resulted in lifelong or permanent loss.

[7] Thus, arguably, this objection does not relate to the Magistrate Judge's finding that the Plaintiff's claims sound of medical negligence, which does not constitute deliberate indifference. See, e.g., Webb v. Hamidullah, 281 F. App'x 159 (4th Cir. June 6, 2008) (unpublished) ("Put simply, negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference.") (citing Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)).

11

<u>Webb</u>, 281 F. App'x at 166 (citations omitted).

After review, the Court agrees with the Magistrate Judge that, even considering the facts in the light most favorable to the Plaintiff, his claims sound of medical negligence, which without more, does not constitute deliberate indifference to serious medical needs. <u>See</u> <u>Miltier</u>, 896 F.2d at 851 ("noting that medical treatment "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment.") (citations omitted). In addition, the Court believes that the Plaintiff's allegations of delay do not indicate an Eighth Amendment violation, and furthermore, that the Plaintiff's requested amendment still would not salvage his claim.

Here, the Court recognizes that the Plaintiff contests the accuracy of the medical records submitted by the Defendants, as well as the affidavit of Dr. Loranth; however, the Court first notes that the Plaintiff himself actually attached many of his medical records to his complaint, and the records he submitted are identical to the records submitted by the Defendants. Moreover, even viewing the evidence in the Plaintiff's favor and accepting his  contradictory statements, the Court does not believe his claims amount to a constitutional violation. First, the Plaintiff admits that he arrived at FCI-Williamsburg on May 11, 2006, and he alleges that he had received x-rays while he was in transit but that they were lost. The Plaintiff admits that Dr. Loranth ordered more x-rays; however, he asserts that x-rays likely would not identify his condition. <u>See Smart v. Villar</u>, 547 F.2d 112 (10 th Cir. 1976) (noting that a disagreement as to the proper treatment to be received does not in an of itself state a constitutional violation). Next, the Plaintiff admits undergoing lab tests on June 13, 2006, and June 27, 2006. (<u>See</u> Entry 1-3, 1-4, 1-6, 1-7.) The Plaintiff further

admits that when he experienced severe abdominal pain on or about June 22, 2006, he was seen by a mid-level practitioner and was given a "serious pain relief commonly known as a 'GI Cocktail.'" (Entry 1 at 3.) Also, the Plaintiff asserts that when his lab tests were reviewed, he was transferred to the hospital for further tests and surgery. Although the Plaintiff disagrees with some of the medical treatment he received and asserts that Dr. Loranth was rude and discriminated against him based on his psychiatric diagnosis, the record indicates that the Plaintiff received medical treatment for his complaints and that when it was determined that the Plaintiff needed further testing and possible surgery, he was quickly transferred to the hospital for such. Here, viewing the evidence in the light most favorable to the Plaintiff, the Court simply cannot find that the Defendants' treatment of the Plaintiff was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Estelle, 429 U.S. at 105.

Furthermore, the Court does not believe that the Plaintiff's allegations of delay indicate an Eighth Amendment violation or that his proposed amendment will salvage his claim. First, as previously determined, the Court finds that the Plaintiff has failed to show  that the Defendants acted with deliberate indifference. The evidence does not demonstrate that any doctor had determined that the Plaintiff needed treatment or surgery but that the Plaintiff was denied such treatment or surgery or that such treatment or surgery was unduly delayed. Rather, as previously set forth, the record indicates that the Plaintiff received medical treatment when it was necessary; moreover, when it was determined that the Plaintiff needed further testing and possible surgery, he was promptly transported to the hospital. In addition, even though the Plaintiff now asserts that he suffers emotional pain as a result of his interactions with Dr. Loranth, the Court finds that he has failed to

13

properly support this claim with medical evidence (or otherwise). See Martinez v. Powers, 2009 WL 2513480 (D.S.C. Aug. 13, 2009) (Currie, J.) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)) ("[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.").[8]

Next, with respect to the Plaintiff's request to hold an evidentiary hearing so that he may call witnesses on his behalf (including an expert witness), it appears that this objection

---

[8] Furthermore, as a practical matter, it is not entirely clear whether the Plaintiff's claim of emotional harm amounts to the requisite level of "substantial harm" contemplated by the law. For example, in Webb, the Fourth Circuit evaluated a plaintiff's claim of unconstitutional delay in receiving a hernia operation. The Court stated:

> [I]n order to defeat summary judgment on the delay issue, Webb was obligated to establish that the delay in his surgery caused him substantial harm – evidenced by, for example, a marked increase in his hernia's size, frequent complaints of severe pain [while waiting for the surgery], or signs that his hernia was becoming non-reducible or incarcerated.



281 F. App'x at 167. The Court in Webb also cited the following cases: Miltier v. Beorn, 896 F.2d 848, 852-53 (4th Cir. 1990) (concluding, where inmate suffered heart attack and died, that jury could find that physicians were deliberately indifferent by failing to follow up on recommendations for inmate's cardiac care); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir. 2000) (finding that the objective element of the deliberate indifference test was established where the defendant knew the plaintiff may be suffering from a heart attack but refused to drive him to the hospital); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). Several other cases evaluating the harm caused by delay have involved some sort of physical harm. See Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984) (involving a miscarriage that occurred after not being taken to hospital for five hours); Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980) (involving "infections and abscesses leading to continued and unnecessary pain and loss of teeth" due to delays in dental care); Lamm v. Helgemoe, 437 F. Supp. 269, 312 (D.N.H. 1977) (involving actions that could "result in permanent damage or require corrective surgery"); Derrickson v. Keve, 390 F. Supp. 905, 907 (D. Del. 1975) (involving the refusal to perform surgery on an inmate that would be permanent because the inmate was serving a life sentence); but see Parrish v. Johnson, 800 F.2d 600, 611 (6th Cir. 1986) (holding that prisoners proceeding under the Eight Amendment may recover for pain, suffering, and mental anguish).

14

relates to the Magistrate Judge's finding that the Plaintiff failed to establish a claim under the FTCA. In the R&R, the Magistrate Judge concluded that the Plaintiff had not set forth "any evidence, except for his own conclusory allegations, that the defendants failed to conform to a required standard or were negligent," and that the plaintiff "failed to establish any causal link between the alleged negligence and the injury." (Entry 21 at 12.)

As the Magistrate Judge noted, in a medical malpractice case in South Carolina, a plaintiff must prove by a preponderance of the evidence: the recognized and generally accepted standards, practices, and procedures that would be exercised by competent physicians in the same specialty under similar circumstances; that the physician negligently deviated from the generally accepted standards; that such negligent deviation was a proximate cause of the Plaintiff's injury; and that the Plaintiff was injured. See, e.g., Dumont v. United States, 80 F. Supp. 2d 576, 581 (D.S.C. 2000). Furthermore, the Plaintiff must establish by expert testimony both the standard of care and the defendant's failure to conform to the standard, unless the subject matter is of common knowledge so that no special learning is needed to evaluate the defendant's conduct.

After review, the Court agrees with the Magistrate Judge's findings. Moreover, although the Plaintiff requests an evidentiary hearing so that he may call witnesses in his favor, he has not identified any potential witnesses that he would like to call (including, e.g., an expert who could testify as to the standard of care), and he has not sufficiently described or explained the testimony that these witnesses would be able to provide on his behalf. Here, not only has the Plaintiff failed to demonstrate the standard of care or show the manner in which the Defendants deviated from the standard of care, but also, the Plaintiff has not shown any causal link between any alleged negligence and his alleged

15

injuries. See Harley v. United States, 2009 WL 187588 (D.S.C. Jan. 26, 2009) (Herlong, J.) (finding that the plaintiff's "inconclusory statements, without supporting evidence" are insufficient to establish that the defendant breached its legal duty of care); Harrison v. Fed. Bureau of Prisons, 2008 WL 5429827 (D.S.C. Dec. 30, 2008) (Floyd, J.) (adopting the Magistrate Judge's finding that the Plaintiff failed in his burden of proof, noting that "the plaintiff has not set forth any evidence, except for his own conclusory allegations, that the defendants failed to conform to a required standard of care or were negligent"); Sheppard v. Berrios, 2008 WL 509073 (D.S.C. Feb. 21, 2008) (Seymour, J.) (same).

Based on the above, the Court finds the foregoing objections to be without merit.

C.    Finally, the Plaintiff objects that "the Court may take jurisdiction of the Breach of Conduct claims; which so construed Brown has sta[t]ed a claim against the United States p[u]rsuant to 28 U.S.C. § 1346(a)(2) and 28 U.S.C. § 1491." (Entry 23 at 2.) The Plaintiff further asserts that these claims should be transferred to the Federal Claims Court to the extent they exceed the jurisdictional amount.

After review, the Court finds this objection without merit, and therefore, it is overruled.

<h3 style="text-align:center"><u>CONCLUSION</u></h3>

Based on the foregoing, it is hereby

**ORDERED** that the Defendants' motion (Entry 15) is granted and the Plaintiff's motion (Entry 18) is denied. Specifically, the Court grants summary judgment in favor of the Defendants on the Plaintiff's Eighth Amendment claim alleging deliberate indifference to serious medical needs, and the Court finds that dismissal of the Plaintiff's FTCA claim is appropriate. Because the Court recognizes the practical difficulties for a prisoner

attempting to assert a claim for medical malpractice under the FTCA, the Court will dismiss this claim without prejudice in the event that the Plaintiff is able to obtain the necessary evidence and/or testimony necessary to establish a claim. In addition, the Court dismisses the Plaintiff's state law claims without prejudice.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

September _____, 2009
Charleston, South Carolina